# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS GOMEZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 10-cv-6412 (PAC) |
| -v- | |
| GRAVITAS TECHNOLOGY, INC., | |
| Defendant. | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTIONS FOR CERTIFICATION OF SETTLEMENT CLASSES, FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FLSA SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND APPROVAL OF REPRESENTATIVE SERVICE AWARDS (IN THE FORM OF ENHANCEMENT PAYMENTS)**

On August 27, 2010, Named Plaintiff[1] commenced this Action against Defendant as a "hybrid collective and class action" on behalf of himself and others similarly situated under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL").  Plaintiffs, in the capacity Network Engineers who performed Help Desk and other "troubleshooting" and nonexempt functions, were employed by Defendants in the United States in non-officer, non-management positions (from three to six years prior to the filing of the Lawsuit up to the final disposition of the Lawsuit),were misclassified as exempt from federal and state overtime law, and were not paid overtime hours for hours worked in excess of forty (40) per workweek in violation of the FLSA and NYLL.  (DE-1, 3) Glatter Decl.[2] ¶ 6).

---

[1]     The Named Plaintiff is Carlos Gomez (the "Named Plaintiff" or "Plaintiff Gomez"), and the Opt-In Plaintiffs are Andre Corbin, John Dwyer, and Narin Nhem ("Opt-In Plaintiffs" and, collectively with the Named Plaintiff, "Plaintiffs").

[2]     "Glatter Decl." refers to the Declaration of Denise Rubin Glatter in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement, dated September 11, 2012 .

The Lawsuit[3] sought, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under Federal Rule of Civil Procedure ("FRCP") 23 and state law, and sought unpaid overtime wages, prejudgment interest, liquidated damages, and attorneys' fees and costs.  In response to the Lawsuit, on October 29, 2010, Defendant filed an Answer with affirmative defenses disputing the material allegations in the Lawsuit and denying any liability in the class and collective action.  (DE-8).

After substantial discovery and active litigation of the Lawsuit, including: (1) the review of hundreds of documents; (2) four depositions of Plaintiffs and of representatives of Defendants; and (3) thorough investigation by Class Counsel; and (4) extensive negotiations and non-binding mediation before a U.S. Magistrate Judge, the Parties entered into the Settlement Agreement and Release, dated March 13, 2012, between Plaintiffs and Defendant Gravitas Technology, Inc. ("Defendant" or "Gravitas") (the "Settlement Agreement").  (Glatter Decl. ¶¶ 10-12).  The Settlement Agreement provides for a payment by Defendant to the Class Members, Class Counsel, and the Settlement Administrator of ███████ (the "Settlement Amount").  (Ex. A, § 5.1; Glatter Decl. ¶ 14).

On or around September 2011, Plaintiffs and Gravitas agreed to attempt to resolve this matter through non-binding mediation before a U.S. Magistrate Judge.  In advance of mediation, Plaintiffs and Gravitas exchanged targeted discovery aimed at allowing the Parties to perform damages calculations.  On October 26, 2011, Plaintiffs and Gravitas participated in a mediation session with the Court.  As a result of the mediation, in the weeks following, Plaintiff and Gravitas participated in extensive and contested negotiations, and reached a tentative framework for resolving the case.  (*Id.*).  After a number of additional meetings and discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action,

---

[3]  The Complaint and Amended Complaint are collectively referred to as the "Lawsuit".  (DE-1, 3).

2

as set forth in the Settlement Agreement.  The Settlement Agreement resolves all claims alleged

in the Complaint, provides meaningful benefits to Class Members, and satisfies all of the

"fairness" criteria for final approval.

On April 24, 2012, the Parties jointly moved for preliminary approval of the class

settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs'

counsel as class counsel and approval of the proposed Class Notices.  (DE-26-28).  On May 8,

2012, the Court granted the parties' joint motion based on the Settlement.  (DE-30; Glatter Decl. ¶

20).

Rust Consulting, Inc. ("Rust"), a third-party Claims Administrator mailed the Class

Notices to Class Members on June 7, 2012.  Through the Class Notices, all Class Members have

been notified of the terms of the settlements and their proposed relief, the allocation formula, the

Class Members' right to opt out through the submission of an Exclusion Form, and all Class

Members' rights to object to the settlement.  (Decl. of Stacy Roe Re: Settlement Administration,

dated September 6, 2012 ("Roe Decl.") ¶¶ 8 and Ex. B, thereto), attached to the Glatter Decl. as

Ex. C)).  The Class Notices also informed Class Members of Class Counsel's right to seek one-

third (1/3), or 33.3%, of the Gross Settlement Amount for Class Counsel's attorneys' fees and

their out-of-pocket expenses, as well as Class Counsel's intention to seek a representative service

award of ███████ each (in the form of Enhancement Payments) for certain of the Plaintiffs.  Of

the fifty-nine (59) Class Member, no Class Member filed an objection, and just one NYLL Class

Member opted out.  (Ex. C (Roe Decl.) ¶¶ 11-12, 14).  The final fifty-eight (58) Class Members

appear, from the records available to the Parties following diligent discovery, to be individuals

who Gravitas employed in the positions of Network Engineers, Level I and Level II, as well as

paid Interns, all of whom performed mostly incident management, commonly known as

"troubleshooting", and other nonexempt functions who work or have worked for Gravitas

3

beginning August 27, 2004 through December 31, 2010 who were not paid overtime and who refrained from filing an Exclusion Form to opt-out of the Class.[4]

On September 11, 2012, Plaintiffs filed their Motion for Certification of Settlement Class, Final Approval of Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval").  The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and their Motion for Class Representative Service Awards in the Form of Enhancement Payments ("Motion for Service Awards").  Defendant did not oppose these motions.

The Court held a fairness hearing on September 21, 2012.  Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Awards, the supporting declarations, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Approval of the Settlement Agreement and Certification of Class**

1.      The Court hereby grants the Motion for Final Approval, approves the settlement as fair, reasonable, and adequate, and certifies the Class as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

2.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair,

---

[4]      Former Network Engineers who have previously signed severance agreements releasing New York State Labor Law claims were only eligible for the period from August 27, 2007 though the last day of work for Gravitas or December 31, 2010 whichever was earlier.  Since the Settlement Agreement includes no admission of willfulness by Defendant, Class Members who released their NYLL claims will be entitled to two years of overtime pay starting from August 27, 2008.  Glatter Decl. at footnote 2.

reasonable and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3.      Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4.      "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted).  The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

### *Procedural Fairness*

5.      The settlement is procedurally fair, reasonable, adequate, and not a product of collusion.  *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).  Here, the settlements were reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after

5

extensive negotiations between the parties.  Class Counsel engaged in necessary efforts to obtain

pay and time records that would enable Class Counsel to perform accurate damages calculations.

Class Counsel was able to extrapolate to perform damages calculations based on the records

Defendant was able to provide.  Class Counsel interviewed Plaintiffs and more than ten (10) other

workers (including interns), and obtained and reviewed hundreds of pages of documents from

Plaintiff and the opt-ins.  The Parties also conducted four (4) depositions.  From these sources,

Class Counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims.

6.     On or around September 2011, Plaintiffs and Gravitas agreed to attempt to resolve

this matter through non-binding mediation before this Court.  (Glatter Decl. ¶ 12).  In advance of

mediation, Plaintiffs and Gravitas exchanged targeted discovery aimed at allowing the Parties to

perform damages calculations.  (*Id.*).  On October 26, 2011, Plaintiffs and Gravitas participated in

a mediation session with this Court.  (*Id.*).  As a result of the mediation, in the weeks following,

and ████████████████████████████████████████████████████

████████████, Plaintiff and Gravitas participated in extensive and contested negotiations, and

reached a tentative framework for resolving the case.  (*Id.*).  Thereafter, the Parties agreed on the

detailed, formalized Settlement Agreement to submit to the Court for preliminary and final

approval.  (*Id.* at 12-13).  These arm's-length negotiations involving counsel for the Parties create

a presumption that the settlement they achieved meets the requirements of due process.  *See Wal-*

*Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark v. Ecolab*, Nos. 07 Civ.

8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 at *5 (S.D.N.Y. May 11, 2010).

### *Substantive fairness*

7.     The settlement is substantively fair.  All of the factors set forth in *City of Detroit.*,

495 F.2d at 463 which provides the analytical framework for evaluating the substantive fairness

of a class action settlement, weigh in favor of final approval.

8.      The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

9.      Litigation through trial would be complex, expensive, and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

10.     The Class's reaction to the settlements was overwhelmingly positive.  The Class Notices included an explanation of the allocation formula.  The Class Notices also informed Class Members of their right to object to or exclude themselves from the settlements, and explained how to do so.

11.     None one of the Class Members submitted a timely objection to the Settlement, and just one of the initial fifty-nine (59) Class Members requested exclusion, resulting in a Class numbering fifty-eight (58).  This overwhelmingly favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.  *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion).

12.     Therefore, the second *Grinnell* factor weighs in favor of final approval.

13.     The parties have completed enough discovery to recommend settlement.  The

pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).   Here, over the course of more than a year before entering into settlement discussions, Plaintiffs obtained substantial informal and formal discovery, including documentary evidence, deposition testimony, and data on Class Members' damages. The third *Grinnell* factor weighs in favor of final approval.

14.     The risk of establishing liability and damages further weighs in favor of final approval.   "Litigation inherently involves risks."   *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).   One purpose of a settlement is to avoid the uncertainty of a trial on the merits.   *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969).   Here, the fact-intensive nature of Plaintiffs' claims and Defendant's defenses thereto presents risk. The settlements eliminate this uncertainty.   The fourth and fifth *Grinnell* factors weigh in favor of final approval.

15.     The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval.   A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process.   The sixth *Grinnell* factor weighs in favor of final approval.

16.     The Defendant's ability to withstand a greater judgment is not clear.   Certainly, the settlements eliminated the risk of collection, as the Settlement Agreement identifies the method for payout of the Settlement Payment.   Moreover, even if protracted litigation were to yield a judgment larger than the Settlement Payment and although Defendant might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair." *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re*

8

*PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997)) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.").  The seventh *Grinnell* factor is neutral and doesn't preclude final approval since all of the other *Grinnell* factors favor final approval.

17.     The substantial amount of the settlement weighs strongly in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).  In this case, based on Plaintiffs' pre-settlement investigation, the Class Members will receive substantial compensation for the underpayment of wages under the terms of the Settlement Agreement.  The eighth and ninth *Grinnell* factors favor final approval.

**Approval of FLSA Settlements**

18.     The Court hereby approves the FLSA settlement.

19.     The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984); *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7.

20.      Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Torres*, 2010 WL 5507892, at *6 (quoting *deMunecas v. Bold Food, LLC,* No. 09

9

Civ. 440, 2010 WL 3322580, at *6 (Aug. 23, 2010)).  If the proposed settlement reflects a

reasonable compromise over contested issues, the settlement should be approved.  *Lynn's Food*

*Stores*, 697 F.3d at 1354; *Clark*, 2010 WL 1948198, at *7.

21.     The Court finds that the FLSA settlements were the result of contested litigation

and arm's length negotiation.

**Dissemination of Notice**

22.     Pursuant to the Preliminary Approval Order, dated May 8, 2012 (DE-30), the Class

Notices were sent by first-class mail to each identified Class Member at his or her last known

address (with re-mailing of returned Class Notices).  (Ex. C (Roe Decl. ¶¶ 6-10)).  The Court finds

that the Class Notices fairly and adequately advised Class Members of the nature of the action, a

description of the Class, the Class Members' right to exclude themselves from the settlement, and

the right of all Class Members to object to the settlements, to be represented by counsel, and to

appear at the fairness hearing.  Class Members were provided the best notice practicable under the

circumstances.  The Court further finds that the Class Notices and distribution of such Class

Notices comported with all constitutional requirements, including those of due process.

**Award of Fees and Costs to Class Counsel**

23.     On May 8, 2012, the Court appointed The Ottinger Firm, P.C. as Class Counsel

because they met all of the requirements of Federal Rule of Civil Procedure 23(g).  (DE-30).

24.     Class Counsel did substantial work identifying, investigating, prosecuting, and

settling Plaintiffs' and the Class Members' claims.

25.     Class Counsel have substantial experience prosecuting and settling employment

class actions, including wage and hour class actions, and are well-versed in wage and hour law

and in class action law.  *See* Glatter Decl. in Support of Motion for Attorneys' Fees.

26.     The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources to prosecuting this case.

27.      The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel ████████ in attorneys' fees or one-third of the Gross Settlement Amount.

28.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit."  *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Diaz*, 2010 WL 5507912, at *7-8 (following percentage-of-the-fund method); *deMunecas*, 2010 WL 3322580, at * 8-9 (same); *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

29.     In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *See Frank*, 228 F.R.D. at 189.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.  *See Braunstein v. E. Photo.*

*Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (discussing

remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y.

1984) (discussing remedial purpose of NYLL); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990,

994 (N.Y. 2008) (discussing remedial purpose of NYLL).

   30.   Class Counsel's request for one-third of the Gross Settlement Amount is

reasonable and "consistent with the norms of class litigation in this circuit."  *Diaz*, 2010 WL

5507912, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL

782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting

class counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at

*8-9 (awarding class counsel one-third of settlement fund in wage and hour class action);

*Duchene v. Michael Cetta, Inc*., No. 06 Civ.4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10,

2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v.

Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5

(S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case);

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June

28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global

Tech. Co.,* No. 00 Civ. 8495, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at

$11.5 million); *Cohen v. Apache Corp.,* No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr.

21, 1993) (awarding 33 1/3% of $7.75 million fund).

   31.   Class Counsel risked time and effort and advanced costs and expenses, with no

ultimate guarantee of compensation.  A percentage-of-recovery fee award of one-third (1/3), or

33.3%, is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens

Neighborhood Association v. County of Albany*, where the Court held that a "presumptively

reasonable fee" takes into account what a "reasonable, paying client" would pay.  493 F.3d 110,

111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

32.     All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third (1/3) of the Gross Settlement Amount.

33.     Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.' " *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (citing and quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir.2007)) (internal quotes omitted).  In this case, there is no reversion, so all of the Net Settlement Fund is payable to the Class regardless of one member's exclusion from the Class.

34.     The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

35.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of ███████, which the Court deems to be reasonable.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

13

36.     Both the attorneys' fees awarded and the reimbursement of litigation costs and expenses shall be paid from the Gross Settlement Amount.

**Service Awards (in the form of Enhancement Payments**

37.     The Court finds reasonable representative service awards in the form of Enhancement Payments of ▮▮▮▮▮ each for Plaintiff Gomez and Plaintiff Corbin.  This amount shall be paid from the Settlement Amount.

38.     Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See Torres*, 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Clark*, 2010 WL 1948198, at *9 (granting service awards of $10,000 to each of 7 named plaintiffs); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

**Conclusion**

39.      "Final Approval" of the Settlement shall be thirty-one (31) days after the date of this Order if no party appeals this Order. (Settlement Agreement §2.10).

40.     Gravitas shall deposit the Gross Settlement Amount into the Qualified Settlement Fund with Rust within ten (10) days of Final Approval.  (Settlement Agreement §§5.1, 6.1).

41.     Payment to Rust Consulting, Inc., the Settlement Administrator, for its fee shall be in the sum of ████████ and shall be made from the Gross Settlement Amount prior to distribution of the Settlement Shares and Enhancement Payments.

42.     Individual Settlement Amounts (for all Participating Class Members) and Service Awards (in the form of Enhancement Payments) will be distributed from the Qualified Settlement Fund and mailed by Rust within thirty (30) days following Final Approval.  (Settlement Agreement §§2.10, 6.2)).

43.     From the Gross Settlement Amount, Rust shall satisfy the employer obligation of payment of employee payroll taxes, including, but not limited to FICA, FUTA, and SUTA. (Settlement Agreement § 9(A)).  Rust shall also mail appropriate W-2 and 1099 Forms to Class Members.

44.     Payment of Class Counsel's Attorneys' Fees in the sum of ████████ and reimbursement of Class Counsel's actual litigation costs and in the sum of ████████ will be distributed from the Gross Settlement Amount mailed to Class Counsel within twenty (20) days following Final Approval. (Settlement Agreement §§ 2.10, 5.1, 5.2, 6.2).

45.     Rust shall also (a) provide verification to Class Counsel and Defendant's Counsel that it has distributed the Settlement Shares, within ten (10) days of making such distributions; (b) retain copies of all the endorsed settlement checks with releases; and (c) provide Defendant's Counsel with the original or copies of the endorsed Settlement Checks within 150 days following Final Approval.

46.     This action shall be dismissed on the merits with prejudice and all Participating Class Members, as defined in the Settlement Agreement preliminarily approved by the Court on May 8, 2012, shall be and are permanently barred from prosecuting against the Released Parties, as defined in Section 10 of the Settlement Agreement preliminarily approved by the Court on May

15

8, 2012, including without limitation, any claims arising out of the acts, facts, transactions, occurrences, representations, or omissions set forth in the Lawsuit; and through the Final Approval Date of the Settlement.  Moreover, the two recipients of representative service awards in the form of enhancement payments, Plaintiff Gomez and Plaintiff Corbin, are further permanently barred from prosecuting any and all claims against Gravitas existing through the Final Approval Date of the Settlement, in accordance with Section 5.3 of the Settlement Agreement.

47.     Though the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, the judgment is a Final Judgment in accordance with the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

**It is so ORDERED this ___ day of _____, 2012.**


_____
  Honorable James C. Francis, IV
  United States Magistrate Judge

16